IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN DOE, in his capacity as the executor of the Estate of JANE DOE, in his personal capacity, and as the personal representative of JANE DOE,<br><br>Plaintiff,<br><br>v.<br><br>OSAMA BIN LADEN, *et al.*,<br><br>Defendants. | Civil Action No. 01-2516 (RWR) |

**PLAINTIFF'S OPPOSITION TO DEFENDANT AFGHANISTAN'S
MOTION TO VACATE DEFAULT AND DISMISS
CLAIMS AGAINST AFGHANISTAN**

Plaintiff, by counsel, respectfully submits this opposition to the motion by Defendant Islamic Emirate of Afghanistan ("Afghanistan") to vacate the "default judgment" entered against it and to dismiss all claims against Afghanistan.[1]

**MEMORANDUM OF LAW**

Plaintiff's wife was killed in the September 11, 2001 terrorist attacks on the World Trade Center. On December 4, 2001, Plaintiff filed a seven-count complaint against Defendants Osama Bin Laden, Al Qaeda, the Taliban, Afghanistan and the Republic of Iraq ("Iraq").[2] Plaintiff sues

---

[1] Although Afghanistan captions its motion as a motion to vacate the "default judgment" entered against it, no such judgment was ever entered. The Clerk of Court entered a default, not a default judgment, against Afghanistan on January 29, 2003 after it failed to appear and respond to Plaintiff's Complaint.

[2] Afghanistan's motion appears to refer to the Taliban and the Islamic State of Afghanistan synonymously. However, Plaintiff's Complaint contains separate and distinct causes of action against the Taliban and the Islamic State of Afghanistan. *Compl.* ¶¶ 7, 8, 56-63. At all

Afghanistan for conspiring to commit the tortious acts that caused the death of Plaintiff's wife and for wrongful death. *Compl.* ¶¶ 59-63. Plaintiff alleges that Afghanistan is not immune from suit in the United States because its conduct falls within the "tortious conduct" exception to the Foreign Sovereign Immunities Act set forth at 28 U.S.C. § 1605(a)(5). *Compl.* ¶ 2.

On or about July 31, 2002, Plaintiff served Afghanistan through diplomatic channels with a Summons, Complaint, and Notice of Suit. It had sixty days from that date in which to appear and respond to Plaintiff's Complaint. It failed to do so. Consequently, the Clerk of Court entered a default against Afghanistan on January 29, 2003.

More than a year later, and more than eighteen months after it was served with process, Afghanistan asks the Court to vacate the "default judgment" and dismiss Plaintiff's claims against it. For the foregoing compelling reasons, Afghanistan's motion should be denied.

**I.     Afghanistan Has Failed To Provide Any Reason, Much Less Demonstrate Good Cause, Why The Default Should Be Set Aside.**

Afghanistan moves, pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, to vacate the "default judgment" entered against it. However, only a default, not a default judgment, was entered against it. Rule 55(c), not Rule 60(b), governs the setting aside of a default, and Rule 55(c) states, "For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b). In addition to relying on the incorrect rule, Afghanistan has not even attempted to satisfy the "good cause" standard required by Rule 55(c).

---

times relevant to this lawsuit, the Taliban was the entity governing the nation of Afghanistan, which was known during the Taliban's reign as the Islamic State of Afghanistan. The Taliban failed to appear and respond to the Complaint in this action, and the motion before the Court should thus be viewed as pertaining to the nation of Afghanistan only.

2

In order to succeed on a motion to vacate a default, the moving party must satisfy a three-part test. The moving party must demonstrate that: (1) the default was not willful; (2) setting aside the default will not prejudice the plaintiff; and (3) he/she can assert a meritorious defense. *See Jackson v. Beech*, 636 F.2d 831, 835 (D.C. Cir. 1980); *Baade v. Price*, 175 F.R.D. 403, 405-06 (D.C. Cir. 1997). Afghanistan's motion fails to address of these criteria. Nowhere in its motion or in its accompanying memorandum does Afghanistan attempt to explain why it waited so long to respond to the Complaint or to seek to set aside the default. In fact, Afghanistan's counsel contacted Plaintiff's counsel by telephone in approximately mid-2003 -- many, many months before it filed its February 26, 2004 motion -- to inquire whether Plaintiff would agree to vacate the default and take a voluntary dismissal. Plaintiff refused, but Afghanistan still failed to take any steps to vacate the default or otherwise respond to the Complaint.[3] This inordinate delay demonstrates that Afghanistan's conduct has been willful. Because Afghanistan has not demonstrated good cause to set aside the default, its motion must be denied.

---

[3]  Afghanistan mischaracterizes this telephone conversation, claiming that Plaintiff's counsel "refused" to cite any legal authority supporting the Court's exercise of personal and subject matter jurisdiction over Afghanistan in this case. During the telephone conversation, which came "out of the blue" given that so much time had passed since Afghanistan had been served with process and a default had been entered and given that Afghanistan's counsel had neither entered an appearance nor even introduced himself as such to Plaintiff's counsel at any point prior to this conversation, Plaintiff's counsel referred Afghanistan's counsel to the Complaint, which expressly cites the "tortious acts" exception to the Foreign Sovereign Immunities Act, 28 U.S.C. § 1605(a).

**II.     This Court Has Jurisdiction Over Plaintiff's Claims.**

Plaintiff's Complaint clearly establishes the Court's jurisdiction over this case. Section 1330 of Title 28 of the U.S. Code states that district courts "shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state . . . as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605-1607 . . . ." *Compl.* ¶ 1. In addition, Afghanistan clearly is not entitled to immunity under the "tortious acts" exception to the Foreign Sovereign Immunities Act, 28 U.S.C. § 1605(a)(5). That exception states:

> [A] foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case – (5) not otherwise encompassed in paragraph (2) [28 U.S.C. § 1605(a)(2)] above, in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment . . . .

28 U.S.C. § 1605(a)(5). A plain reading of the statute, and Plaintiff's Complaint, shows that Afghanistan's actions fall within this exception.

    **A.     The Plain Language Of 28 U.S.C. § 1605(a)(5) Demonstrates
       There Is No Immunity For Afghanistan.**

Several of the elements necessary to establish the (a)(5) exception are not even contested by Afghanistan. Plaintiff's lawsuit: (1) seeks money damages, (2) against a foreign state, (3) for the death of his wife. Afghanistan's argument concerns the phrase "occurring in the United States" only. Afghanistan argues that "the tortious conduct Doe attributes to the Taliban and [Afghanistan], namely aiding Al-Qaeda and Bin Laden by permitting them to train and stay

in Afghanistan, occurred exclusively in that nation."[4]  *Memo* at 6.  The plain language of the statute and case law demonstrate that Afghanistan's argument is without merit.

The starting point -- and ordinary stopping point -- for analyzing the application of a statute to any set of facts is the plain language of the statute itself.  *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000); *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 475 (1992); *Letelier v. Republic of Chile*, 488 F. Supp. 665, 671 (D.D.C. 1980).  A plain reading of 28 U.S.C. § 1605(a)(5) reveals that it is the "personal injury or death, or damage to or loss of property" that must occur in the United States.[5]  There is no requirement in the plain

---

[4]   In addition to disputing Afghanistan's legal reasoning, Plaintiff also disputes this statement on an additional ground.  Plaintiff sued Afghanistan for conspiracy.  As a member of a conspiracy, Afghanistan is liable for **all** the tortious acts committed by its co-conspirators in furtherance of the conspiracy.  *See Salinas v. U.S.*, 522 U.S. 52, 63-63 (1997); *Halbertam v. Welch*, 705 F.2d 472, 479 (D.C. Cir. 1983).  It is uncontested that the terrorists who carried out the conspiracy did so in the United States by flying hijacked jetliners into the World Trade Center towers in New York, the Pentagon in Washington, D.C., and a field in Pennsylvania.  Consequently, these acts are deemed to be the acts of Afghanistan by operation of law.

[5]   It is a canon of statutory construction that only when a statute's language results in a question or conflict does the Court go beyond plain meaning.  28 U.S.C. § 1605(a)(5) contains no such question or conflict; its plain meaning is clear.  Nonetheless, several cases have considered portions of the legislative history pertaining to the purpose behind 28 U.S.C. §1605(a)(5).  *See Persinger v. Islamic Republic of Iran*, 729 F.2d 835, 843 (D.C.Cir. 1984); *Frolova v. Union of Soviet Socialist Republic*, 761 F.2d 370, 379 (7th Cir. 1985).  In considering this history, this Court found:

> the relative frequency of automobile accidents and their potentially grave financial impact may have placed that problem foremost in the minds of Congress, but the applicability of the Act was not so limited, for the committees made it quite clear that the Act 'is cast in general terms as applying to all tort actions for money damages' so as to provide recompense for 'the victim of a traffic accident or other noncommerical tort.'"

*Letelier*, 488 F. Supp. at 672.  This sentiment was echoed by this Court in *Burnett v. Al Baraka Investment and Development Corp.,* 292 F. Supp. 2d 9, 19 (D.D.C. 2003).

5

language of the statute that the acts causing the personal injury, death, or damage to property at issue must occur in the United States in order for the "tortious acts" exception to apply. This reading of 28 U.S.C. § 1605(a)(5) was confirmed recently by this Court in *Burnett v. Al Baraka Investment and Development Corporation*, 292 F. Supp. 2d 9 (D.D.C. 2003). In *Burnett* the Court rejected the defendants' claim that the phrase "occurring in the United States" meant that both the tortious conduct and the injury must occur in the United States:

> Prince Turki and Prince Sultan also argue that the words "occurring in the United States" of § 1605(a)(5) preclude the claims against them under this exception because the entire tort must have occurred in the United States, meaning both the tortious conduct and the injury resulting from that conduct, and all of their alleged actions took place in Saudi Arabia or elsewhere. I disagree. 'The Foreign Sovereign Immunities Act, ... preserves immunity for tort claims unless injury or death occurs in the United States.' The deaths and injuries of which plaintiffs complain 'occurred in the United States.'

*Id.* at 19, n.4. (internal citations omitted). *Burnett* is directly on point. Plaintiff's wife was killed in the United States as a result of the tortious act of Afghanistan and its co-conspirators. The "tortious acts" exception clearly applies.

Afghanistan's reliance on *Persinger v. Islamic Republic of Iran*, 729 F.2d 835 (D.C. Cir. 1984) for proposition that the tortious conduct must occur within the United States for 28 U.S.C. § 1605(a)(5) to apply is clearly misplaced. In addition to Afghanistan being liable for each tortious act resulting from the conspiracy, including but not limited to, the actual hijacking and crashing of the airliners, Afghanistan has misread *Persinger*. In *Persinger*, a son and his parents filed suit against the Islamic Republic of Iran for injuries the son suffered while a hostage in Iran. The issue before the Court in *Persinger* was whether, "Congress, in enacting the FSIA, intended to exercise jurisdiction to give courts in this competence to hear suits against foreign states for

torts **committed on United States embassy premises abroad.**" *Persinger*, 729 F.2d at 839 (emphasis added). Not only did the tortious acts occur outside the United States in *Persinger*, but the injury did as well.[6] This is clearly a different case. In fact, Judge Edwards recognized the difference in his dissent:

> I find the language of this provision [28 U.S.C. § 1605(a)(5)] unambiguous and clearly applicable on its face to the parents' claim. In particular, the statute requires that **only the injury**, and not the tortious act or omission, occur in the United States.

*Id.* at 844 (Edwards, J., dissenting) (emphasis original). Judge Edwards' words are clearly reflected in the Court's opinion in *Burnett*. *Burnett*, 292 F. Supp. 2d at 19.

Afghanistan also cites *Frolova v. Union of Soviet Socialist Republics*, 761 F.2d 360 (7th Cir. 1985) and *Cicippio v. Islamic Republic of Iran*, 30 F.3d 164 (D.C. Cir. 1994) for the proposition that 28 U.S.C. § 1605(a)(5) does not apply because its tortious acts took place outside the United States. *Frolova* and *Cicippio* fail to support Afghanistan's argument for the same reason that *Persinger* does not support Afghanistan's argument: the facts and issues of the cases are too different to make them binding on this case. In addition to finding that none of the tortious acts at issue in those cases occurred within the United States, the Courts held that "indirect effects in the United States" were not sufficient to fall within the exception. *Frolova*, 761 F.2d at 380, *Cicippio*, 30 F.3d at 165, 169.[7]

---

[6] While it could be argued that the injuries suffered by the parents of the hostage -- mental and emotional distress -- occurred within the United States, their injuries was the direct result of the injuries their son suffered at the hand of the Iranian kidnappers **in Iran**.

[7] It also should be noted that none of the cases on which Afghanistan relies involve a conspiracy to commit tortious acts within the United States.

The plain language of 28 U.S.C. § 1605(a)(5) as well as precedent within this jurisdiction support application of the "tortious acts" exception to the facts of this case. Afghanistan's motion must be denied.

### B. Plaintiff's Reliance on 28 U.S.C. § 1605(a)(5) Is Completely Proper.

Afghanistan argues in the alternative that the "tortious acts" exception cannot apply to this case because another exception contained in the Foreign Sovereign Immunities Act "specifically and expressly deals with claims based on the type of terrorist act that forms the basis of [Plaintiff's] claims." *Memo* at 5-6. Afghanistan's novel legal argument must fail, both logically and for lack of legal precedent.

The alternative exception cited by Afghanistan, which concerns foreign states designated by the U.S. Department of State as state sponsors of terrorism, is set forth in the Foreign Sovereign Immunities Act at 28 U.S.C. § 1605(a)(7). Logically, Afghanistan's argument must fail because, as Afghanistan itself points out, this exception does not apply to it. Plaintiff does not allege, and Afghanistan does not concede, that Afghanistan was ever designated as a state sponsor of terrorism by the U.S. Department of State. Plaintiff only makes this allegation with respect to his claims against Iraq. *Compl.* ¶ 68. There is nothing inconsistent or improper about a plaintiff alleging that one statutory exception applies to one defendant and another statutory exception applies to another defendant. Nor is there any indication that Congress intended to repeal or limit the "tortious acts" exception to the Foreign Sovereign Immunities Act by enacting the "state sponsors of terrorism" exception in 1996. *See Huerra v. First Northern Savings & Loan Ass'n*, 805 F.2d 896, 901 (10th Cir. 1986) (absent any legislative intent to the contrary, a

subsequent amendment to a statute is not presumed to change a statute).  Following Afghanistan's argument to its logical conclusion would result in a complete inability for U.S. citizens to bring tort claims against any foreign state arising from acts of terrorism other than the handful designated as state sponsors of terrorism.  This giant loophole would cut against the very purpose behind having exceptions to the Foreign Sovereign Immunities Act in the first place.

Additionally, the authority upon which Afghanistan relies, *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428 (1989) is not at all on point.  *Amerada Hess* does not stand for the proposition that Plaintiff is precluded from utilizing 28 U.S.C. § 1605(a)(5) with respect to one defendant if §1605(a)(7) applies to another defendant.  Rather, the Court in *Amerada Hess* held that, where Congress has "dealt comprehensively with the subject of foreign sovereign immunity in the FSIA," a suit based on the Alien Tort Statute may be precluded. *Amerada Hess*, 488 U.S. at 438.  Since this case does not involve the Alien Tort Statute or another potentially competing statute, *Amerada Hess* is unavailing.  Moreover, Congress has "dealt comprehensively with the subject of foreign sovereign immunity in FSIA" by enacting separate and distinct exceptions for separate and distinct factual situations.   Again, nothing in the Foreign Sovereign Immunities Act, and nothing in the case law cited by Afghanistan, precludes Plaintiff from relying on the "tortious acts" exception with respect to Afghanistan while also relying on the "state sponsors of terrorism" exception with respect to Iraq.  Afghanistan's motion must be denied.

### III. Conclusion.

For the foregoing compelling reasons, Plaintiff respectfully requests that Afghanistan's motion be denied.

        Respectfully submitted,

        JUDICIAL WATCH, INC.

        _____
        Paul J. Orfanedes, Esq.
        D.C. Bar No. 429716
        James F. Peterson, Esq.
        D.C. Bar No. 450171
        501 School Street, S.W.
        Suite 725
        Washington, D.C.  20024
        (202) 646-5172

        Attorneys for Plaintiff