UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                )
JOHN DOE, <u>et al.</u>,           )
                                )
        Plaintiffs,             )
                                )
        v.                      )    Civil Action No. 01-2516 (RWR)
                                )
SHEIKH USAMA BIN-MUHAMMAD       )
BIN LADEN, <u>et al.</u>,          )
                                )
        Defendants.             )
_____)

<u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff John Doe brought an action as executor of the estate and personal representative of Jane Doe and on his own behalf invoking the noncommercial tort exception to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605(a)(5), alleging that the Transitional Islamic State of Afghanistan ("Afghanistan") unlawfully conspired with the Taliban and Iraq to conduct the September 11, 2001 attacks in which Doe's wife died. Afghanistan, asserting foreign sovereign immunity, has moved under Fed. R. Civ. P. 12(b)(1) to dismiss the complaint for lack of subject matter jurisdiction. Because Doe has set forth some factual allegations of Afghanistan's participation in the conspiracy, but additional evidence may confirm or disprove the presence of subject matter jurisdiction, Afghanistan's motion to dismiss will be denied without prejudice and the parties will be directed to confer regarding limited jurisdictional discovery.

-2-

BACKGROUND

Doe filed this action against Afghanistan and other
defendants for conspiracy and wrongful death under the FSIA
noncommercial tort exception seeking compensatory and punitive
damages.  He alleges that Afghanistan, in concert with the other
defendants, conspired to "conduct illegal and unlawful terrorist
attacks on the United States, including, on information and
belief, the terrorist attacks of September 11, 2001" in which
Doe's wife died.  (Compl. ¶¶ 19, 60.)  Doe served process upon
Afghanistan through diplomatic channels as permitted by 28 U.S.C.
§ 1608(a)(4).  See Docket Entry 11.  Afghanistan has moved to
dismiss Doe's complaint for lack of subject matter jurisdiction,
maintaining that Doe's cited exception does not abrogate
Afghanistan's sovereign immunity.  (Def.'s Mem. in Supp. of Mot.
to Vacate & Dismiss ("Def.'s Mem.") at 4-6.)[1]

DISCUSSION

"The objection that a federal court lacks subject-matter
jurisdiction . . . may be raised by a party, or by a court on its

_____

    [1]    Afghanistan also moves to dismiss for lack of personal
jurisdiction and seeks to vacate the clerk's January 29, 2003
entry of default against it.  If subject matter jurisdiction
exists and Afghaistan does not enjoy immunity under the FSIA,
personal jurisdiction exists since service of process has been
made in accordance with the FSIA.  See Valore v. Islamic Republic
of Iran, 478 F. Supp. 2d 101, 107 (D.D.C. 2007).  Because it has
not yet been determined whether subject matter jurisdiction
exists, Afghanistan's request to vacate the clerk's entry of
default will be denied without prejudice.

own initiative, at any stage in the litigation . . . ." <u>Arbaugh</u>
<u>v. Y&H Corp.</u>, 126 S. Ct. 1235, 1240 (2006) (citing Fed. R. Civ.
P. 12(b)(1)).  "On a motion to dismiss for lack of subject-matter
jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the
burden of establishing that the court has subject-matter
jurisdiction."  <u>Larsen v. U.S. Navy</u>, 486 F. Supp. 2d 11, 18
(D.D.C. 2007) (citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S.
555, 561 (1992)).  The court must construe the plaintiff's
allegations liberally.  <u>See</u> <u>Sadhvani v. Chertoff</u>, 460 F. Supp. 2d
114, 118 (D.D.C. 2006).  "Because subject-matter jurisdiction
focuses on the court's power to hear the claim, however, the
court must give the plaintiff's factual allegations closer
scrutiny when resolving a Rule 12(b)(1) motion . . . ."  <u>Jin v.</u>
<u>Ministry of State Sec.</u>, 475 F. Supp. 2d 54, 60 (D.D.C. 2007).
Subject-matter jurisdiction can never be waived.  <u>Arbaugh</u>, 126 S.
Ct. at 1244.

     "'If the defendant challenges only the legal sufficiency of
the plaintiff's jurisdictional allegations, then the district
court should take the plaintiff's factual allegations as true and
determine whether they bring the case within any of the [FSIA]
exceptions to immunity invoked by the plaintiff.'"  <u>Kilburn v.</u>
<u>Socialist People's Libyan Arab Jamahiriya</u>, 376 F.3d 1123, 1127
(D.C. Cir. 2004) (quoting <u>Phoenix Consulting Inc. v. Republic of</u>
<u>Angola</u>, 216 F.3d 36, 40 (D.C. Cir. 2000)).  But, if the factual

-4-

basis of the court's jurisdiction is challenged, "'the court must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss.'"  Id. (quoting Phoenix Consulting Inc., 216 F.3d at 40).  See also Collett v. Socialist Peoples' Libyan Arab Jamahiriya, 362 F. Supp. 2d 230, 236 (D.D.C. 2005) (noting that when a factual basis is challenged, the court cannot deny a Rule 12(b)(1) motion to dismiss "merely by assuming the truth of the facts alleged by the plaintiff").

The court "retains considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction." Kilburn, 376 F.3d at 1131 (internal quotations omitted).  However, any discovery that is conducted should be limited to avoid "frustrat[ing] the significance and benefit of . . . immunity from suit." Foremost-McKesson, Inc. v. Islamic Republic of Iran, 905 F.2d 438, 449 (D.C. Cir. 1990) (internal quotation marks omitted) (brackets and ellipsis in original) (noting that when conclusory allegations attributing actions of co-defendants to Iran are challenged, "the plaintiff must provide further proof of government involvement").  See also Collett, 362 F. Supp. 2d at 236 (noting that the plaintiff must be given "ample opportunity to secure and present evidence relevant to the existence of jurisdiction" (internal quotation marks omitted)). "[A] court should allow for limited jurisdictional discovery if a

plaintiff shows a nonconclusory basis for asserting jurisdiction
and a likelihood that additional supplemental facts will make
jurisdiction proper."  Intelsat Global Sales & Mktg., Ltd. v.
Comm'ty of Yugoslav Posts Tels. & Tels., 534 F. Supp. 2d 32, 34
(D.D.C. 2008).  "At minimum, a plaintiff must 'allege some facts
upon which jurisdiction could be found after discovery is
completed.'"  Id. (quoting Doe I v. State of Israel, 400 F. Supp.
2d 86, 122 (D.D.C. 2005)).

        Under the FSIA, a court may entertain jurisdiction over a
civil complaint directed against a foreign sovereign "only if the
foreign state lacks immunity under the Act's prescriptions[.]"
Practical Concepts, Inc. v. Republic of Bolivia, 811 F.2d 1543,
1544 (D.C. Cir. 1987); see also 28 U.S.C. § 1604; Price v.
Socialist People's Libyan Arab Jamahiriya, 294 F.3d 82, 87-88
(D.C. Cir. 2002) ("The original FSIA was not intended as human
rights legislation. . . .  Thus, no matter how allegedly
egregious a foreign state's conduct, suits that did not fit into
one of the statute's discrete and limited exceptions invariably
were rejected.").  The Act's exceptions allow a plaintiff to
bring suit under certain conditions.  28 U.S.C. § 1605; see
Republic of Austria v. Altmann, 541 U.S. 677, 699 (2004)
("'[S]ubject-matter jurisdiction . . . depends on the existence
of one of the specified exceptions to foreign sovereign
immunity.'" (quoting Argentine Republic v. Amerada Hess Shipping

-6-

Corp., 488 U.S. 428, 434-35 (1989))).  Doe bears the burden of

showing that one of the exceptions under the FSIA constitutes a

waiver of Afghanistan's sovereign immunity.  See Jin, 475 F.

Supp. 2d at 61.

Doe invokes the noncommercial tort exception to the FSIA

which dissolves immunity in any case "in which money damages are

sought against a foreign state for personal injury or death . . .

occurring in the United States and caused by the tortious act or

omission of that foreign state[.]"  28 U.S.C. § 1605(a)(5).

Afghanistan argues that the noncommercial tort exception is

inapplicable because the terrorism exception stated in 28 U.S.C.

§ 1605A(a)(1)[2] is the provision that exclusively "deals with

. . . the type of terrorist act that forms the basis for Doe's

claims."[3]  (Def.'s Mem. at 5 (citing Persinger v. Islamic

Republic of Iran, 729 F.2d 835, 843 (D.C. Cir. 1984) ("When

Congress uses explicit language in one part of a statute to cover

a particular situation and then uses different language in

another part of the same statute, a strong inference arises that

_____

[2]    The exception was codified at 28 U.S.C. § 1605(a)(7) at
the time that Afghanistan filed its memorandum.  That section has
since been repealed by Pub. L. No. 110-181, 122 Stat. 3 (2008),
and is now found at 28 U.S.C. § 1605A(a)(1).

[3]    This exception abrogates immunity in any case "in which
money damages are sought against a foreign state for personal
injury or death that was caused by an act of torture,
extrajudicial killing, aircraft sabotage, hostage taking, or the
provision of material support or resources for such an act[.]"
28 U.S.C. § 1605A(a)(1).

-7-

the two provisions do not mean the same thing.")).)  Afghanistan

maintains that because § 1605A(a)(1) expressly addresses

terrorist acts, see Mwani v. Bin Laden, 417 F.3d 1, 15 n.15 (D.C.

Cir. 2005), § 1605(a)(5) cannot cover similar claims.

Alternatively, Afghanistan contends that even if Doe were to

invoke the terrorism exception as a waiver of immunity, his

complaint must be dismissed because § 1605A(a)(2)(A)(i)(I)

requires that the foreign sovereign be designated as a state

sponsor of terrorism, and the State Department has not classified

Afghanistan as such.[4]  (Def.'s Mem. at 5.)

Section 1605(a)(5) is cast in general terms pertaining to

all tort actions for money damages and seems facially to apply to

Doe's factual allegations.  See Persinger, 729 F.2d at 839-40

(citing H.R. Rep. No. 94-1487, at 20-21 (1976)).  Doe

persuasively argues that precluding him from bringing his action

under § 1605(a)(5) would "result in a complete inability for U.S.

citizens to bring tort claims against any foreign state arising

from acts of terrorism other than the handful designated as state

sponsors of terrorism."  (Pls.' Opp'n to Def.'s Mot. to Vacate

Default & Dismiss ("Pls.' Opp'n") at 9.)  "[C]onstruction of a

statute leading to unjust or absurd consequences should be

---

[4]      The complaint does invoke both the noncommercial tort
and the terrorism exceptions, but the latter is not applicable to
Afghanistan because Afghanistan has never been designated as a
state sponsor of terrorism.  See Mwani, 417 F.3d at 15 n.15.

-8-

avoided[,]" <u>Quinn v. Butz</u>, 510 F.2d 743, 753 (D.C. Cir. 1975),

and courts should not "ascribe to Congress errors that it clearly

did not intend." <u>Crooker v. Bureau of Alcohol, Tobacco &</u>

<u>Firearms</u>, 670 F.2d 1051, 1089 (D.C. Cir. 1981) (Mikva, J.,

concurring).  Thus, the plain language of the statute should not

dictate forbidding Doe's suit under § 1605(a)(5), and the

peculiar result that a construction barring the action would

produce should counsel against it.

To move forward under § 1605(a)(5), Doe must show that

Afghanistan's tortious conduct caused his injuries and that

Afghanistan's actions were not discretionary, "i.e., not grounded

in [its] social, economic, or political policies." <u>In re</u>

<u>Terrorist Attacks on Sept. 11, 2001</u>, 392 F. Supp. 2d 539, 554

(S.D.N.Y. 2005).  Doe claims that although Afghanistan was not

one of the direct perpetrators of the attacks in the United

States, Afghanistan is liable as a co-conspirator "for all the

tortious acts committed by its co-conspirators in furtherance of

the conspiracy." (Pls.' Opp'n at 5 n.4.)[5]  Under a theory of

---

[5]     Afghanistan might not be individually liable under
Doe's wrongful death claims in the absence of a conspiracy
theory.  The complaint does not allege tortious actions committed
by Afghanistan in the United States. <u>See</u> <u>Asociacion de</u>
<u>Reclamantes v. United Mexican States</u>, 735 F.2d 1517, 1524 (D.C.
Cir. 1984) (noting that the conduct at issue "lacks the required
nexus with the United States").  Section 1605(a)(5) "requires
that both the tortious act as well as the injury occur in the
United States." <u>Cicippio v. Islamic Republic of Iran</u>, 30 F.3d
164, 169 (D.C. Cir. 1994) (finding that noncommercial tort
exception did not apply to kidnappings that occurred in Lebanon);

civil conspiracy, the acts of one defendant may be imputed to
another.  See Mazloum v. Dist. of Columbia, 442 F. Supp. 2d 1, 11
(D.D.C. 2006).  In order to establish a civil conspiracy, a
plaintiff must allege (1) "an agreement between two or more
persons or entities; (2) to do an unlawful act, or an otherwise
lawful act by unlawful means; (3) there was an overt act
committed in furtherance of this unlawful agreement; and (4)
damages were incurred by the plaintiff as a proximate result of
the actions taken pursuant to the conspiracy." Estate of Heiser
v. Islamic Republic of Iran, 466 F. Supp. 2d 229, 267 (D.D.C.
2006).  To survive Afghanistan's motion to dismiss, Doe "must
plead facts from which it reasonably can be inferred that
[Afghanistan] knew or should have known that their tortious
actions were supporting terrorists or terrorist fronts." In re
Terrorist Attacks, 392 F. Supp. 2d at 554.  See also Burnett v.
Al Baraka Inv. & Dev. Corp., 274 F. Supp. 86, 104-05 (D.D.C.

---

State of Israel, 400 F. Supp. 2d at 108 (holding that despite
plaintiffs' allegations of a conspiracy, they did not suggest
that any of the acts committed by individual defendants occurred
in the United States).
    Doe claims that "at least four of the nineteen hijackers
from the September 11, 2001 attacks received training at camps in
Afghanistan run by Bin Laden and Al Queda" (Compl. ¶ 21), and
that the terrorists have used Afghanistan "as a safe haven and
base of operations from which to carry out terrorist attacks on
the United States." (Id. ¶ 22.)  Afghanistan allegedly served as
the meeting place for "Iraqi intelligence officials [to meet]
with Bin Laden." (Id. ¶ 30.)  Doe's complaint asserts that all
activities conducted by Afghanistan that might have lent support
to the attacks in the United States, if any, occurred in
Afghanistan. (Id. ¶¶ 21, 22, 30, 32, 33, 36, 60.)

2003) (finding that the complaint adequately alleged facts to
establish defendant as a co-conspirator because defendant "aided
al Qaeda terrorist groups . . . by providing them with recruits,
weapons and money" and that defendant supported "al Qaeda with
knowledge of, and the intent to further, al Qaeda's terrorist
activities").

In the complaint, Doe alleges that Afghanistan "expressly
agreed to conduct illegal and unlawful terrorist attacks on the
United States[]" and "provided material support and resources" to
Bin Laden and Al Qaeda, including "a safe haven and base of
operation" from which to conduct their activities.  (Compl.
¶ 60.)  In support of the assertion that Afghanistan agreed to
the attacks, Doe alleges that meetings to plan terrorist
activities occurred in Afghanistan, id. at 30, 32, and that the
Taliban, acting as officials or agents of Afghanistan, provided
material support and assistance by allowing Bin Laden and Al
Qaeda to "operate training camps inside Afghanistan from which
they plan, train for, and carry out terrorist attacks against the
United States[.]"  (Id. ¶¶ 21, 22, 58.)  (See also Pls.' Opp'n at
1 n.2 (stating that the Taliban was the "entity governing the
nation of Afghanistan").)  However, Afghanistan states that the
Taliban did not have universal diplomatic recognition as the
representative government even though the Taliban referred to
itself as the Islamic Emirate of Afghanistan and had "partial

-11-

military control of the nation's territory." (Def.'s Mem. at 3;
Def.'s Notice of Filing, Decl. of Enayat Qasimi ¶ 3.) The
connection between the Taliban and Afghanistan is a disputed
factual issue that affects whether the complaint sufficiently
alleges that Afghanistan participated in the conspiracy. See
Foremost-McKesson, Inc., 905 F.2d at 448 (noting that sufficient
fact finding was necessary to determine whether actions of co-
defendants could be attributed to Iran and that the
"[d]etermination of 'who is and is not an agent of whom will be
in great part factual'" (quoting Gilson v. Republic of Ireland,
682 F.2d 1022, 1029 (D.C. Cir. 1982))). Evidence of this
relationship could support an inference that Afghanistan agreed
to provide a sanctuary or resources knowing that Al Qaeda and Bin
Laden intended to engage in terrorist activity. See In re
Terrorist Attacks on Sept. 11, 2001, 349 F. Supp. 2d 765, 801
(S.D.N.Y. 2005) (stating that conclusory allegations are
insufficient for subject matter jurisdiction because "[t]here
must be some facts to support an inference that the defendant
knowingly provided assistance or encouragement to the
wrongdoer"); Valore v. Islamic Republic of Iran, 478 F. Supp. 2d
101, 109 (D.D.C. 2007) (finding that allegations of providing
material support and resources to Hezbollah were supported by the
facts showing that the defendants engaged directly in "numerous
overt acts[,]" including approving and facilitating the attack).

-12-

Doe has made factual allegations sufficient to suggest that jurisdiction could be found after limited discovery.  <u>See</u> <u>Intelsat Global Sales & Mktg., Ltd.</u>, 534 F. Supp. 2d at 36. Since Afghanistan has asked to present evidence concerning subject matter jurisdiction if the court determines that the noncommercial tort exception applies (Def.'s Reply at 7 n.3), limited jurisdictional discovery is warranted.

<u>CONCLUSION AND ORDER</u>

While § 1605(a)(5) does not preclude Doe from bringing his civil conspiracy claim against Afghanistan, a factual dispute exists that affects the determination of subject matter jurisdiction.  Thus, Afghanistan's motion to dismiss will be denied without prejudice to its refiling after the parties have an opportunity to conduct limited discovery.  Accordingly, it is hereby

ORDERED that Afghanistan's motion [26] to vacate entry of default and dismiss the complaint be, and hereby is, DENIED without prejudice.  It is further

ORDERED that the parties confer and submit by October 31, 2008 a joint report proposing a plan for conducting discovery limited to facts bearing upon the court's subject matter jurisdiction.  A proposed order shall accompany the joint report.

-13-

SIGNED this 30th day of September, 2008.


_____/s/_____
RICHARD W. ROBERTS
United States District Judge